NAOMI ELLIS *vs.* GEORGE H. FELT.

Worcester. October 4, 1910. — October 18, 1910.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Frauds, Statute of. Contract,* Consideration. *Practice, Civil,* Exceptions.

The part of the statute of frauds which relates to an oral promise to pay the debt of another, contained in R. L. c. 74, § 1, cl. 2, has no application to a novation by which a new oral promise of another person is accepted in place of the promise of the original debtor, who thereby is released from liability for the debt.

In an action to recover for services rendered to the father of the defendant in taking care of the rooms occupied by him and in washing and mending his clothes, for which it was alleged that the defendant promised to pay, there was evidence that after a part of the alleged services had been performed by the plaintiff the defendant authorized the rendering of all further services on his account in such a way as to make the debt his from the beginning, and there was testimony that the defendant said that, if the plaintiff would continue to perform the services, he would pay the debt already contracted and that the plaintiff might look to him for its payment instead of to his father, that the plaintiff accordingly did look to him for payment, discharging the father, and that the father on the next day or soon after indicated his approval of this arrangement. *Held,* that there was evidence warranting a verdict for the plaintiff for compensation for the services rendered both after and before the defendant's alleged promise.

The exclusion of evidence, which tends merely to contradict a fact conceded by the party who offered it, affords no ground for exception.

CONTRACT for services in taking care of rooms occupied by Charles W. Felt, the father of the defendant, and also for washing and mending clothes of Charles W. Felt. Writ dated April 8, 1908.

In the Superior Court the case was tried before *Bishop,* J. The following facts appeared in evidence.

On May 1, 1902, the plaintiff and her husband, Asa F. Ellis, went to live on a farm in Northborough, occupied by the defend-

ant's father, Charles W. Felt.   Asa F. Ellis first hired the farm
from one William H. Sampson, who sublet it to him during
the year 1902, and from 1903 Asa F. Ellis hired the farm from
Charles W. Felt until he died on March 10, 1907, and paid
rent therefor at the rate of $6 and $7 a month.   Charles W.
Felt reserved two rooms on the second floor in the house on the
farm for himself; and the plaintiff took care of those two rooms.

In May, 1902, Charles W. Felt told the plaintiff that he would
pay her $6 a month, or $1.50 a week, if she would take care of his
rooms and wash and mend his clothes.   Under the above promise
the plaintiff did this work until some time in May, 1905, the date
not being definitely stated; but she received no money from
Charles W. Felt for this work.

Charles W. Felt was seventy-two years old when he died in
1907.   He had been somewhat feeble.   Up to the time of his
death he had boarded with Asa F. Ellis, paying fifteen cents a
meal.

Charles W. Felt paid Ellis for his meals, but never had paid
for the care of his rooms and the washing and mending of his
clothes, although he several times had promised to pay the
plaintiff up to May, 1905.

The plaintiff's husband testified as follows: "In the latter
part of May, 1905, I don't know just the date, George Felt drove
into my yard, or into the yard premises where I lived, with his
automobile in the afternoon, and wanted to know if his father
was at home.   I told him he was not, I thought he had gone to
Worcester.   He asked after his father as usual and got ready
to go away, and I says, ' Mr. Felt, I would like to speak with
you a minute.'   ' Very well, what is it? '   ' Mr. Felt, when we
came here,' I says, ' my wife made a trade with your father to
do his work.'   ' Is that so ? what was the trade ? '   So I told
him a dollar and a half a week, to take care of his two rooms,
washing, ironing and mending.   Those rooms were separate
from our department.   I says, ' From that time to now she has
never got anything for doing the work, and she says she will do
it no longer without she has pay for it.' — Q.  That would be a
period of how long?   A. That would be a period of three years.
— Q. Now you may go on.   A. ' Well,' he says, thinking it over,
' Father has got to stay somewhere, and this is his home, he is

better off here than anywhere else, really, I can't have him.' He says, ' You tell your wife if she will continue to do the work she has done for father, I will pay her.' ' Yes,' I says, ' but how about this back time she has been doing the work and no pay for it ? ' ' Well,' he says, ' I will pay that too if she will continue looking after father.' Then I says, ' My wife will look to you for the bill instead of your father?' He says, ' Yes, she can, I will pay it.' "

This testimony was corroborated by one Smith, a witness for the plaintiff, who heard the conversation between the defendant and the plaintiff's husband.

The plaintiff testified that she did not hear the conversation between her husband and the defendant, but saw the defendant talking to her husband in the yard, and afterwards was told what the defendant said. A day or two later, Charles W. Felt, the father of the defendant, having returned home, told Mr. and Mrs. Ellis that he intended to have some money for Mrs. Ellis, but did not get it. Mr. Ellis then told Charles W. Felt that he had spoken to his son George, the defendant, in regard to it, and he said, " You need not give it any more thought or worry, that he, George, said he would pay the back bill, and from now on his wife would look to him, George, and not to you for her pay." Charles W. Felt seemed to be pleased and satisfied.

The plaintiff testified that she took care of the rooms of Charles W. Felt and did his washing and mending from May 1, 1902, to December 1, 1906, when Charles W. Felt was taken to the defendant's home. He died on March 10, 1907.

There was evidence of the defendant tending to controvert that of the plaintiff.

William H. Sampson, a witness for the defendant, testified as follows: " Q. Did you ever hear Mr. Charles W. Felt say anything about the arrangement with Mr. and Mrs. Ellis about his board and room rent? — The plaintiff's counsel. I object. — The Judge. You may state this to me and not the jury. — Q. Where was it? A. At my house in Northborough. — Q. One conversation or more? A. Several conversations. He used to come to my house. — Q. What did he say about this matter? A. My wife wanted to take a few boarders to make a dollar or two, and Mr. Felt came down to the house and I said, ' How are

you getting along up to the house?' and he says, 'Fairly well.' I says, 'Are you satisfied up there?' 'Well, fairly so.' I thought he wasn't quite satisfied, and so I says, 'What are you paying Mr. Felt, any way?' I understood him to say three or three and a half dollars a week. I says, 'Does this include your washing and everything all through?', and he says, 'Yes, everything.'" The judge refused to allow the testimony of this conversation to go to the jury, and the defendant excepted.

At the close of the evidence the defendant asked the judge to rule as follows:

"1. On the law and all the evidence the plaintiff is not entitled to recover.

"2. The defendant did not acquire any benefit from the plaintiff for the promise that the plaintiff claims the defendant made, and therefore the statute of frauds applies to the case.

"3. The evidence shows that the promise claimed to be made by the defendant is to pay the debt of another and must be in writing to hold the defendant.

"4. The promise to pay the plaintiff for past and future services rendered to Charles W. Felt was within the statute of frauds.

"5. On the evidence, the plaintiff cannot recover for services that may have been rendered after May, 1905, because it does not appear that the defendant agreed to have the charges made to him."

The judge refused to make any of these rulings, and submitted the case to the jury with other instructions. The jury returned a verdict for the plaintiff in the sum of $349; and the defendant alleged exceptions, which after the death of *Bishop*, J., were allowed by *Sanderson*, J.

*J. J. Shaughnessy,* (*F. P. O'Donnell* with him,) for the defendant.

*W. Temple,* for the plaintiff.

KNOWLTON, C. J. The defendant's requests for rulings and the refusal to give them, with the exceptions taken to this refusal, present the principal questions in this case: They are founded on that part of the statute of frauds which relates to an oral promise to pay the debt of another. None of the instruc-

tions requested could properly be given, for each of them called for a ruling equivalent to the direction of a verdict for the defendant, when in fact there was ample evidence to warrant a finding of a novation, whereby the defendant's father was released from his liability upon a debt and the defendant was substituted as the promisor to pay it.

As to the part of the plaintiff's claim which accrued after the defendant's alleged promise, the plaintiff's evidence was that the defendant authorized the services to be rendered on his account, in such a way as to make the debt his from the beginning. What was said, according to the plaintiff's witnesses, gave sufficient authority to charge the services to the defendant as they were rendered.

As to the debt contracted before the defendant's agreement, there was testimony that he said he would pay it, and that the plaintiff might look to him for it instead of his father; that she did accordingly look to him for it, discharging the father, and that the father, the next day or soon after, indicated his approval of the arrangement, thus making every one interested a party to it. There was no error in the refusal, or in the instruction to which exception was taken. See *Furbish* v. *Goodnow*, 98 Mass. 296; *Caswell* v. *Fellows*, 110 Mass. 52; *Trudeau* v. *Poutre*, 165 Mass. 81, 86.

The only other question arises upon the exclusion of testimony of a declaration made by the defendant's father. The testimony had no connection with any matter of fact in the case, except the question whether there was such a debt from the defendant's father as the plaintiff contended, before the defendant's contract was made. The declaration of this deceased person, under the R. L. c. 175, § 66, if found by the court to be made in good faith, had some tendency to prove that the defendant's father never owed the plaintiff for the care of his rooms, and washing and mending his clothes, as that service was included in the price paid for his board. But the defendant's bill of exceptions states as a fact that the father told the plaintiff he would pay her one dollar and a half a week, or six dollars a month, to care for his room and wash and mend his clothes, and that under these terms she did the work and he failed to pay her, although he several times promised to pay. It was a sufficient reason for excluding

the testimony that it had no tendency to prove anything except a contradiction of a fact that is now conceded by the defendant, and presumably was admitted at the trial.

*Exceptions overruled.*