HENRIETTA P. MARTIN, Respondent, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

### St. Louis Court of Appeals, May 4, 1915.

1. **LIFE INSURANCE:** Construction of Contracts. In interpreting life insurance policies and contracts modifying the same, the court should ascertain the intention of the parties from a consideration of their situation and what they were endeavoring to do.

2. ————: Extension of Time for Paying Premium: Agreement Construed. One whose life was insured by a life insurance policy, the annual premiums on which were due May 9, and which provided that the payment of each premium would not maintain the policy in force beyond the day when the next premium was payable, except that a grace of thirty days, or one month, if greater, would be granted for the payment of every premium after the first, during which time the insurance should continue in force, wrote to insurer's general agent requesting an extension of the premiums. The agent replied that the company would consider his application for a three months' extension of the premiums, but that the cost would be $6. Insured sent that amount to the agent, with an application for the extension, of which the agent acknowledged receipt, and thereafter wrote that he inclosed the company's approval of the application to extend the premiums to August 9th. Insured tendered payment of the premium on September 1st, which was refused by the company on the ground that it was made too late, and shortly thereafter insured died. *Held*, that the contract of extension contemplated extending the time of operation of premiums already paid, so as to extend the coverage of the insurance up to August 9, and did not relate to the extension of time for payment of the premium due on May 9, and the provision of the policy giving insured thirty days' grace for the payment of premiums became operative on the date to which

the insurance was thus extended, so that the payment tendered on September 1st was made in time.

3. **INSURANCE: Consideration.** The premium is the consideration for insurance.

4. **LIFE INSURANCE: Laws Governing: Conflict of Laws.** A life insurance contract, being transitory in character, so as to follow the person of the insured, the cause of action accrues at the place where death occurs, and matters pertaining to the performance of the contract are to be determined under the law of the place where performance is to be had.

5. ———: ———: **Penalty for Vexatious Refusal to Pay.** Sec. 7068, R. S. 1909, imposing on insurance companies a penalty for vexatious delay in paying the amount due under a policy, applies to a life insurance policy written and delivered in another State, where the insured moved to this State and he and beneficiary were living in this State at the time of his death, since the payment of the amount due pertains to the performance of the contract and is governed by the law of the place where performance is to be made.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones*, Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant; *Frederick L. Allen* of counsel.

The demurrer to the evidence should have been sustained: (a) Because the uncontroverted evidence shows that both of the policies sued on had, by the terms of the policies themselves, lapsed and become void on June 9, 1910, for non-payment of premiums due May 9, 1910—on that day or within one month of grace allowed thereafter—and the records of appellant show that these policies were declared lapsed and void on June 10, 1910, for non-payment of the premiums due May 9, 1910. (b) Because the uncontroverted evidence shows that all contractual relations between the insured and appellant, created by the policies sued on, ceased and determined on June 10, 1910, and that

such policies were void and of no force or effect at the time of the death of the insured. (c) Because the uncontroverted evidence shows that any contractual relations existing between appellant and the insured at the time of his death arose on September 7, 1910, on which date, and in reliance upon statements and representations made in the application for establishing and putting in force and effect the original policies, such application was approved. The representations and statements so made by the insured, in such application for reinstatement of the policies, were that his occupation was that of a laborer, while in fact his occupation was that of a railroad switchman, which occupation was continued to the time of and resulted in his death. (d) Because by express agreement of the insured all of the statements made in his original application for insurance were ratified and confirmed and made part of his application for re-establishing the policies; that in such application for the original policies the insured stated that his occupation was that of farmer; that he agreed if, within one year from the date of the application, he should engage in the occupation of switchman his policy should become void, while in fact when such application for reinstatement was made, insured was employed as a switchman, and so continued to the time of his death, and his death was the direct result of such employment. (e) Because the only contracts in force between the insured and appellant, at the time of his death, were the contracts created by the approval, on September 7, 1910, of the insured's application for establishing the policies; and by the agreement between appellant and the insured, as well as by operation of law, the insured's agreement that he would not engage in the occupation of switchman within one year from September 7, 1910, became both a covenant and a warranty, and was breached by the insured by the fact that, at the time

such application was made, he was engaged in the occupation of switchman, and continued in that occupation up to the time of his death. (f) Because the new contracts of insurance made between the insured and appellant were voided by the insured by his own act. Jenkins v. Covenant Mutual Life Ins. Co., 171 Mo. 375; McGeehan v. Mutual Life Ins. Co., 131 Mo. App. 417; Sheets and Day v. Ins. Co., 153 Mo. App. 630; Pacific Mutual Life Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862; Lentz v. Vermont Life Ins. Co., 139 Pa. St. 546, 23 Am. St. Rep. 202, 10 L. R. A. 577.

*F. H. Bacon* for respondent.

(1) The two policies sued on never lapsed or determined, but remained in force continuously from the time of delivery, May 9, 1908, up to the time of the death of the insured, March 25, 1911. This is so for the following reasons: (a) The last annual premium on the policies was payable May 10, 1910, and under the terms of the policy the insured was entitled to a grace of thirty days during which time the policies remained in force. Before June 9, 1910, the manager of the defendant at Louisville, Kentucky, notified the insured that the payment of the premiums on the two policies was extended to August 9, 1910, which was in response to a request of the insured for an extension of three months. The insured paid six dollars for this extension. If the extension of three months was to date from May 9 the insured would still have a grace of thirty days, which would make the premium payable September 9. If the three months' extension dated from the expiration, June 9, 1910, of the thirty days of grace it would also make the date of payment September 9, 1910. If this is not true, then while the insured paid for a three months' extension, he only received in fact a two months' extension and was deprived of

the thirty days of grace provided by the terms of the policy for the payment of every premium. On August 19, 1910, the insured paid the premiums in full, receipt of which was acknowledged on September 1st. (b) There is no condition of forfeiture for non-payment of the premium to be found in either policy. The contracts in question were contracts for the whole of life, being promises to pay a specified gross sum in consideration of an annuity paid to the company during twenty years. In the absence of any stipulation in the contract for forfeiture on the ground of non-payment, the policy will remain in force during the lifetime of the insured. Haas v. Mutual Life Ins. Co., 84 Neb. 682, 121 N. W. 996, 26 L. R. A. (N. S.) 747, 19 Ann. Cas. 58; New York Life Ins. Co. v. Statham, 93 U. S. 24; Gruwell v. Knights & Ladies of Security, 126 Mo. App. 496. (c) It follows as a necessary conclusion that if either of the foregoing propositions is true the appellant had no right to demand of the insured in August, 1910, the so-called application for establishing the policy and the same was improperly admitted in evidence and must be entirely disregarded as in no way competent, relevant or material. (2) The plaintiff was entitled to damages for vexatious refusal to pay and the matter was fairly submitted to the jury. At the time of his death insured was a citizen of Missouri and plaintiff is a citizen of Missouri and must be entitled to the protection of the laws of Missouri. A contract of insurance is transitory and the cause of action accrues under a policy of life insurance at the place where the death occurs. Rippstein v. St. Louis Mutual Life Ins. Co., 57 Mo. 86; Jones v. Insurance Co., 173 Mo. App. 1, 16.

NORTONI, J.—This is a suit on two separate policies of life insurance. Plaintiff recovered and defendant prosecutes the appeal.

The petition is in two counts. The first declares upon one of the policies and the second upon another. Both policies were issued by defendant on the same date—that is, May 9, 1908—in the amount of $1000 each, and by their terms the premiums are payable annually on the ninth day of May each year, with a provision allowing a grace of thirty days (or one month, if greater) for the payment of every premium after the first. The two policies are identical in their provisions in every respect, and plaintiff's husband, since deceased, was the insured in both, while she is the beneficiary mentioned therein. The insured paid the first and second premiums on both policies, and, indeed, paid the third, too, but there is a controversy as to whether he paid the third premium in due time and the defense pertains to this matter.

It is set forth in defendant's answer that both of the policies lapsed for the nonpayment of the premiums falling due May 9, 1910, and that, therefore, the insurance was not in force at the time of the death of the insured.

At the trial, the court peremptorily instructed a verdict in favor of plaintiff, in the view that the policies were in force at the time of the death of the insured, and submitted only the question pertaining to damages for a vexatious refusal to pay. It is argued this was error, but we are not so persuaded.

The facts concerning this matter are as follows:

It appears the insured found himself unable to meet the premiums falling due on the policies May 9, 1910, and wrote defendant's general agent at Louisville, Kentucky, through whose office the premiums were payable, concerning this fact, but this letter of the insured is not in evidence. The premiums were payable, as before said, on May 9, 1910, but a grace of thirty days, or one month, if greater, was allowed by the provision of the policy. During this period of grace—that is on May 14, 1910—defendant's general

agent wrote plaintiff's husband, the insured, as follows:

"The company will be willing to consider your request for a three months' extension of the premium and I have, therefore, inclosed herewith blank forms, which should be signed by you at the place indicated and returned to me together with check for six dollars."

Though the insured's letter in response to this and the application, if any was formally made, in accordance with the request, is not in evidence, it appears that defendant's general agent wrote the insured under date May 26, 1910, as follows:

"I have received your letter of the 24th inst. inclosing money order for six dollars with request for extension of the premiums on policies Nos. 1736230-232. I will forward the requests to the company and advise you as soon as their reply is received."

Thereafter, on June 4, 1910, defendant's general agent wrote the insured, as appears from the letter in evidence, as follows:

"I inclose the company's approval of your request to extend the premiums on policies Nos. 1,736,230-232 to August 9."

These three letters of the general agent of defendant reveal the entire contract in respect of this matter, for if any formal writing touching it was entered into, it is not produced in evidence by either party. It appears from this correspondence, and, indeed, it is not denied, that the insured paid defendant six dollars— that is, three dollars on each policy—for the extension therein contemplated, and subsequently, on September 1, 1910, he paid the premiums which were due on May 9 of the same year on both policies.

But the defendant tendered such payments back and asserts that the policy had lapsed on August 9, for that the letter of its general agent of June 4 recites that day as the limit of time to which the pre-

miums were extended. The insured died shortly after the premiums were paid on September 1, and plaintiff insists that such payments were made in due time in accordance with the contract extending the premiums and the period of grace provided in the policies.

The following provisions of the policies are to be considered as relevant here:

"Except as herein provided, the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium, or installment thereof, is payable. . . . A grace of thirty days (or one month, if greater), subject to an interest charge of five per cent per annum, shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the period of grace, the unpaid portion of the premium for the then current policy year shall be deducted from the amount payable hereunder."

Under the express terms of this provision, the last annual premium theretofore paid continued each policy in force until and including the date when the next premium was due—that is, in the instant case, May 9, 1910—and a grace of thirty days, or one month, if greater, was allowed in addition for payment of such premium, in connection with which the policy expressly provides that, "during which time the insurance shall continue in force." It appears defendant's general agent wrote the insured that the company would consider his application for a "three months' extension of premium but that the cost to him would be six dollars therefor." The insured paid defendant the six dollars requested on this representation, according to the letter of defendant's agent of date May 6, 1910, "for extension of the premiums on policies Nos. 1,736,-230-232." On June 4 defendant's general agent wrote insured, "I inclose the company's approval of your

request to extend the premiums on policies Nos. 1,736,-230-232 to August 9, 1910."

It is obvious that if the extension be begun on May 9, 1910, and continue for three months, it would expire on August 9 of the same year, as indicated in the last letter. But, according to this, insured would be deprived entirely of his thirty days of grace stipulated in the policy, and, for the six dollars he had paid, he would receive, in fact, but two months' extension, whereas the proposal was to afford him three months' extension for six dollars.

But it is argued that, as the letter of defendant's general agent, of date June 4, last above quoted, fixes August 9 as the limit of the extension, it must control. The question presented is one of interpretation solely, and it is well to ascertain the situation of the parties and what they were endeavoring to do, and discover from this the true intention as revealed in the policy and its modification appearing in the letters of defendant's general agent. The insured found himself unable to pay the premiums when due and wrote defendant's agent concerning that matter. Defendant's agent in reply wrote the insured that, for the payment of six dollars, he could have an "extension of the premiums" three months on both policies. In response to this the insured remitted the six dollars and thus signified his acceptance of the proposal. There is nothing in this correspondence to suggest that the insured should surrender, as parcel of this transaction, his days of grace which the policy otherwise gave him, but the proposal was to afford him, in the precise language of the letter, "three months' extension of the premiums." Subsequently, the letter of June 4 says the company approved the request "to extend the premiums" to August 9. It appears, therefore, that the real matter in contemplation between these parties and what they were endeavoring to do was "to extend the premiums" so as to carry the policies in force during the time.

The policies provided, as above pointed out: "Except as herein provided, the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium, or installment thereof, is payable." But this provision is subject to one following it, providing a grace of thirty days, or one month, if greater, etc., above copied. Under the provisions quoted, the prior premium paid supported and sustained the insurance in force until the next was due and during the grace period of thirty days, or one month, if granted. It seems to be clear that this premium, which had otherwise expired on June 9, when considered under the provision for allowing grace, was that which was extended in consideration of six dollars paid, so as to impart support to the insurance during the time.

When the letters of the defendant's general agent, in which is revealed the entire contract concerning this matter are considered, it is to be noted that there is no expression therein about the extension of the time for payment of premiums or anything of that character, but rather the extension is of the premiums. In the first letter on the subject, that of May 14, 1910, defendant's general agent says, "the company will be willing to consider your request for a three months' *extension of the premiums.*" According to this, the parties contemplated the extension of the premiums, for there is nothing said about an extension of time for payment, and evidently they contemplated extending premiums which supported the policies under their provisions to May 9 and then allowed an additional grace of thirty days, or one month, if greater, for its payment, during which time the policy was continued in force.

The second letter of defendant's general agent, under date of May 26, 1910, treats the matter the same, for nothing is said therein concerning additional time for a payment or that any time was limited for pay-

ment, but it treats entirely with an extension of the premiums. So much as is relevant of this letter is as follows: "I have received your letter of the 24th inst., inclosing money order for six dollars with the request for *extension of the premiums.*"

The premium, in insurance, is the consideration therefor (see Bouvier's Law Dictionary), and evidently what the parties were extending was the consideration theretofore paid and its effect to sustain the insurance during the time and the provision of the policy relevant thereto. Nothing is said about extending time for the payment of another or a new consideration, but the language employed relates to the extension of the premiums. On June 4, 1910, defendant's agent wrote the final letter to the insured, touching this matter, in which he said, "I inclose the company's approval of your request *to extend the premiums* on policies Nos. 1736230-232 to August 9th. It seems to be clear that the parties intended to extend the premiums with the support they imparted to continue the insurance in force under the terms of the policies from May 9, 1910, until August 9, 1910, which provision of the policies above set out was subject to the further provision subsequent thereto allowing "A grace of thirty days (or one month, if greater) . . . during which time the insurance shall continue in force." This being true, the payment of the premiums made on September 1, 1910, was within the time provided for and the policies continued in force. The trial court did not err in instructing a verdict for plaintiff on the policies.

The jury allowed plaintiff damages as for defendant's vexatious refusal to pay, in the amount of ten per cent on the face of the policies, and likewise an attorney's fee of $500, on the same ground, under the provisions of section 7068, Revised Statutes 1909. It is argued that the court erred in permitting this, for that the policies in suit were issued in the State of Indiana and are in nowise Missouri contracts. It is

true the insured resided in Indiana at the time the insurance was effected, and under the general rule they are to be regarded as Indiana contracts. However, he removed to Missouri very soon thereafter and resided here about two years prior to his death. He died in this State and his wife, now his widow, who resided here with him during all of the time continues to reside here. Such contracts are transitory in character and follow the person of the insured. The damages contemplated by our statute above referred to proceed in the nature of a penalty with a view of enforcing prompt payment. It is the conduct of the insured in vexatiously refusing to perform the contract which authorizes the award of such damages. [See Jones v. Prudential Ins. Co. of Am., 173 Mo. App. 1, 155 S. W. 1106.] In this view, it was obviously proper to submit that question to the jury.

But defendant relies upon the case of Thompson v. Traders' Ins. Co., 169 Mo. 12, 68 S. W. 889, as an authority to the effect that such damages may not be recovered here, under a policy issued and accepted in a foreign State. The case cited does not declare the rule to the extent invoked here. In that case the suit was on a policy of fire insurance covering furniture and household goods in the State of Kansas. The property insured was destroyed by fire in the State of Kansas and the suit instituted in Missouri. The court declared that, in the circumstances of that case, damages were not recoverable under the Missouri statutes for vexatious refusal to pay, for the reason that the policy in suit was not to be performed in this State according to its terms, but rather it was a Kansas contract, not only because of its execution there, but because it contemplated performance in that State as well. Touching this matter the court said:

"In Scudder v. Bank, 91 U. S. 406, the Supreme Court of the United States formulated a rule bearing upon the doctrine of the *lex loci contractus, lex loci rei*

*sitae,* and *lex fori,* as follows: 'Matters bearing upon
the execution, the interpretation, and the validity of
a contract are determined by the law of the place where
the contract is made. Matters connected with its per-
formance are regulated by the law prevailing at the
place of performance. Matters respecting the remedy,
such as the bringing of suits, admissibility of evidence,
statutes of limitation, depend upon the law of the place
where the suit is brought.' The Missouri statute im-
posing this penalty for vexatious delay, does not relate
to the remedy. It is a matter connected with the per-
formance of a contract. Hence, it can only apply to
contracts that are to be performed in Missouri. It has
no application to contracts like the policy in suit, which
was made in Kansas, where the property insured was
located and was destroyed in Kansas, where the con-
tract was to be performed in Kansas, and where the
cause of action accrued and became complete in Kan-
sas.'' [See Thompson v. Traders' Ins. Co., 169 Mo.
12, 29, 68 S. W. 889.]

Even under the authority of that case it is manifest
the court declares in plain terms that matters con-
nected with the performance of the contract are regu-
lated by the law prevailing at the place of performance,
and the court declares, too, that a vexatious refusal to
pay is a matter connected with the performance of the
contract.

No one can doubt that a contract of life insurance
providing for the payment of an amount on the event
of the death of the insured is transitory in character,
without regard to the place of its original execution,
and that it follows the person of the insured, so as to
enable the enforcement of performance where the death
occurs. The performance contemplated in such a con-
tract is the payment of the amount agreed when the
death occurs, and the cause of action accrues where
that event takes place. [See Rippstein v. St. Louis
Mutual Life Ins. Co., 57 Mo. 86.] The matters per-

taining to the performance of the contract are to be determined under the law of the place where the performance is to be had, and the court very properly submitted to the jury the matter of damages for vexatious refusal to pay.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.