## MARTHA E. HUTCHINSON, Respondent, v. NATIONAL LIFE INSURANCE COMPANY, Appellant.

### Kansas City Court of Appeals, April 30, 1917.

1. **LIFE INSURANCE POLICY: Date: Delivery.** A policy of life insurance providing for payment of annual premiums in advance was dated one day and delivered on another. It was held that the date of delivery and the corresponding date each year were the dates upon which the premiums were to be paid.

2. ———: **Premiums: Thirty Days' Grace: Forfeiture.** A life insurance policy provided that if any premium be not paid when due the policy should remain in force for thirty days, but if not paid by the expiration of that time should be void. It was *held* that where the premium was not paid during the currency of the thirty days, it should be counted as due as if there had been no thirty day provision.

3. ———: ———: **Days of Grace: Extended Insurance: Time.** Where a premium on life insurance is not paid within the days of grace allowed for its payment after default, the days of grace period should be counted in computing extended insurance.

4. ———: **Net Value: Reserve: Statute: Dividends.** The "net value" of a life insurance, as contemplated by section 6946, Revised Statutes 1909, is the reserve, and a dividend which has been declared but not paid does not become a part of the net value.

5. ———: **Dividend: Premium: Additional Insurance.** Where a life insurance policy provided that a dividend declared and not drawn by the insured, should be credited on the next annual premium to become due; or in the event that the assured paid the whole premium it should be applied to the purchase of additional in-

surance and the assured failed to pay the premium; it was *held* that the dividend would be applied automatically as a credit on the premium and would not become a part of the net value of the policy, nor would it be applied to the purchase of extended insurance.

6. ———: Extended Insurance: Dividends: Quarterly Premiums. Where a life policy of insurance provides that the premium may be paid annually, semi-annually, or quarterly, it was *held* that the company could not be compelled to apply a dividend to the partial payment of a quarter and thus extend the insurance.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

Reversed.

*Campbell & Ellison* and *Locke & Locke* for appellant.

*Higbee & Mills* for respondent.

ELLISON, P. J.—Plaintiff's action is to recover upon a policy of life insurance for $5000 issued upon the life of her deceased husband by the Des Moines Life Insurance Company and assumed by defendant in its reinsurance of that company's business. The policy is dated the 2nd day of May, 1907, for a premium of $84.75 payable in advance on the 2nd day of May of each year during the term of insurance. The policy provided for thirty days' grace for payment of premiums. The insured died on the 3rd of October, 1914, without having paid the premium due the preceding May, and the defense is based on that default.

Plaintiff concedes the default, but claims the policy remained in force beyond the date of the death by reason of extended insurance based on the "net value" of the policy, under the provisions of section 6946, Revised Statutes, 1909; and she insists that this net value is aided by a dividend of $19.12 due deceased; and that the period of extended insurance is added to by the provision for thirty days of grace for the payment of premiums after they become due; and, by the fact that the policy was not delivered until May 22nd, whereby premiums were not

due until the 22nd of May each year. That is to say, it is plaintiff's claim that in determining the purchasing power of the "net value" of the policy, the amount of the dividend should be added to it; and that in determining the time from which the period of extended insurance should begin to run, the time of the delivery of the policy and not its date, should be considered; and that the thirty days' grace should be allowed.

The trial court adopted plaintiff's view and rendered judgment for her.

The statute referred to reads as follows: "The net value of the policy, when the premium becomes due, and is not paid, shall be computed upon the actuaries' or combined experience table of mortality, with four per cent interest per annum, and after deducting from three-fourths of such net value, any notes given on account of past premium payments on said policy issued to the insured, and any evidence of indebtedness to the company, which notes and indebtedness shall be then cancelled, the balance shall be taken as a net single premium for temporary insurance for the full amount written in the policy."

From May 2nd, the date on the face of the policy, until deceased's death on the 3rd of October (counting by the day) is a period of one hundred and fifty-four days. The statute above quoted is that the net value of the policy at the time the premium becomes due is to be ascertained with four per cent interest, and that three-fourths of such value (after deducting indebtedness) is considered a single premium extending the life of the policy for the same proportion of a year that such three-fourths net value bears to an annual premium. That is to say, if the three-fourths net value at the time of default is $50 and the annual premium defaulted is $100 the life of the policy would be extended for six months.

It is admitted by defendant that a single net premium on a policy of $5000 at deceased's age of forty-six years at his death, was sixteen and ninety-one hundredths cents per day and that the net value of the policy was $23.50, and that three-fourths of this would purchase, at the rate

of a single net premium, one hundred and thirteen days extended insurance. It is, however, claimed by plaintiff that according to the testimony of witnesses, testifying as experts for defendant, based on the character of policy this is, it would purchase one hundred and seventeen days and we will assume this to be correct. But, counting from the date of the policy, that lacks thirty-seven days of reaching to the death of deceased; and counting from the date of delivery of the policy (say May 22nd) and not the date on its face (Halsey v. Ins. Co., 258 Mo. 659) it would still lack sixteen days. Therefore, in order to save her case, plaintiff must maintain a right to thirty days' of grace after May 22, or that the dividend of $19.12 should be counted as a part of the "net value" of the policy. If she can sustain either one of these positions, within the terms of the policy as they are pleaded in the petition, it will carry extended insurance beyond the date of deceased's death, as the dividend is a sum sufficient to purchase insurance far beyond that time.

The provision of the policy as to days of grace is as follows: "If any premium be not paid when due, this policy shall be extended and remain in force for thirty days from such date, and if not then paid with the additional payment of ten cents per thousand dollars of insurance, this policy shall be absolutely void, and all premiums paid shall be forfeited to the Company." In our opinion this did not affect the default; for the assured did not pay within the thirty day period. He did not embrace the terms of the provision. If he had, it would have related back to the default and prevented the forfeiture. But, obviously, by no fair interpretation of the provision, can it be said that the policy was to run an extra thirty days without charge if, as here, the defaulted payment was not made. Deceased had all of the thirty days after the default in which to pay, and if he had died between the default and the expiration of that time the premium, under another provision of the policy, would have been deducted from the amount of the insurance. But if he had the full

time and threw away his days of grace, and died in default, under no circumstances could his beneficiary get aid from that provision. We do not see that Martin v. Ins. Co., 190 Mo. App. 703, cited by plaintiff, has any application, since in that case the premium was paid.

This brings us to the final claim that the dividend should be considered as a part of the net value of the policy. The "net value" at a given time was shown at the trial to be the "reserve." This is conceded and it is the view adopted by the authorities. [Liebing v. Ins. Co., 191 S. W. (S. C.) 250, 254; Rose v. Ins. Co., 153 Mo. App. 90; Fahle v. Ins. Co., 155 Mo. App. 15.] The statute enacts the process whereby the net value is ascertained and does not include an unpaid dividend. On the other hand, the contract in the policy is that the unpaid dividend is to be applied in part payment of the next annual premium.

Running through the argument for plaintiff there is to be found a confusion of statement as to the application of the dividend of $19.12, declared by defendant on the 31st of December, 1913. First is the insistence that it should be applied to the payment of the premium, then follows an assumption that the dividend, thus applied, bought extended insurance. We think that does not follow. The two things are wholly disconnected and distinct matters. A sum which is to be used in payment of premiums becomes a part of the premium fund and pays, or helps to pay, the premium which buys the regular insurance and furnishes no part of the fund which purchases extended insurance, except as it may do so indirectly by a part of it becoming a part of the reserve. The fund which buys the latter insurance is provided by law and is ascertained after the manner pointed out in the statute; while the former is provided for by the contract, and contemplates a continued live contract. The latter is attached by law to prolong the life of a contract which, if left to its own terms, would be ended by forfeiture. Plaintiff truly says, at page 10 of the brief in her behalf, that "the policy provided that the dividend of $19.12 should be applied as a credit on the premium." But it is immediately added, that this, at the rate per day, "carried the insurance 118

days," a period long beyond the date of deceased's death. The policy does provide that "dividends assigned by the company shall be applied to the reduction of each subsequent year'spremium, or if the insured prefer to pay any premium or premiums in full, the dividend or dividends will be applied to the purchase of paid-up additions to the policy." But as deceased did not pay his premium due in May, 1914, this dividend of $19.12 declared the previous December, was automatically credited on that premium, reducing it from $85.75 to $66.63, but still leaving the default. The fact that it was for a less amount does not destroy its force as a forfeiture.

Plaintiff seeks to deal with this dividend as a separate and distinct payment of a premium for the purchase of extended insurance, carrying the life of the policy beyond the death of the insured. This would not be within the law and would be outside the terms of the contract. For, as we have seen, it must be merely credited on the annual premium falling due next after the dividend is declared.

But there is a provision in the policy that premiums may be paid annually, semi-annually, or quarterly, and it may be suggested that the dividend would apply as for, as it would go as a quarterly payment. But the same answer could be made to this as has just been made to a full annual payment. The dividend was not sufficient to cover a quarterly payment, and if, without request from the assured, defendant had credited it as a quarterly payment, it would still have left a default. If a quarterly payment was intended to be made, it, of course, should have been for a full quarter. The defendant could not be required to accept less. [Terry v. Ins. Co., 90 S. C. 1.]

The fact that the lawmakers in legislating on the subject of extended insurance have failed to provide in terms that upon default in payment of premiums when there were dividends declared, but not paid or applied, the amount of such dividends should be used in the purchase of extended insurance, is apparently conclusive it was not intended that they should be used for that purpose. The contract provides for only two uses of unpaid divi-

dends, one as a credit on the next annual premium, and the other to purchase of additional insurance if the insured paid the annual premium in full; and we have seen that as the insured did not pay the premium, the dividend could only be applied as a credit thereon.

It is apparent from plaintiff's petition that the theory that the dividend was to be considered as an addition to the net value of the policy was not entertained when that pleading was drawn; for it is therein alleged that "dividends assigned by the company shall be applied to the reduction of each subsequent year's premium." And that when the defaulted "premium matured and became due (the assured was) entitled to a dividend of $19.12 to be applied as a credit on said premium."

There is a somewhat vague claim made by plaintiff that there was a large surplus due the policy holders and that she should in some way receive such benefit from it as either to discharge the premium defaulted, or at least carry the insurance beyond the assured's death. Nothing of that nature was pleaded.

From the foregoing considerations it follows that the judgment is without legal support and it is therefore reversed. All concur.