## KAVANAGH v. THE MACCABEES.

No. 4281.    Decided December 4, 1925.    (242 P. 403.)

1. INSURANCE—AMBIGUITY IN LANGUAGE RESOLVED IN FAVOR OF INSURED. Ambiguity in language of insurance policy or benefit certificate must be resolved in favor of insured and against insurer.

2. INSURANCE—EFFECT OF WORDS "HOWSOEVER HAPPENING," IN BENEFIT CERTIFICATE REDUCING AMOUNT OF RECOVERY IN CERTAIN CASE, STATED. Words "howsoever happening," in fraternal benefit certificate reducing amount payable if death occurred while engaged in occupation of switchman, howsoever happening, *held* to refer to death incidental to switching, and not to death from causes unconnected with such employment.

3. INSURANCE—PROVISION OF BENEFIT CERTIFICATE REDUCING AMOUNT PAYABLE TO SWITCHMAN'S BENEFICIARY HELD APPLICABLE, ONLY IF DEATH OCCURRED IN CONNECTION WITH SWITCHING. Provision of switchman's fraternal benefit certificate reducing amount payable to beneficiary "if his death occurs while engaged in such occupation" *held* applicable, only to death occurring as result of, or incidental to, employment as switchman.

---

Corpus Juris-Cyc. References.

[1]  Insurance, 32 C. J. pp. 1152 n. 94; 1155 n. 96, 97; 1156 n. 7: Mutual Benefit Insurance, 29 Cyc. p. 67 n. 22.

[2]  Mutual Benefit Insurance, 29 Cyc. p. 145 n. 27.

[3]  Mutual Benefit Insurance, 29 Cyc. p. 145 n. 27.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

Action by Elizabeth Kavanagh against The Maccabees, a fraternal benefit association. Judgment for defendant, and plaintiff appeals.

REVERSED and remanded, with directions.

*Gardner, Schiller & Rolapp,* of Salt Lake City, for appellant.

*Joel Nibley,* of Salt Lake City, for respondent.

FRICK, J.

The plaintiff commenced this action in the district court of Salt Lake county to recover upon a benefit certificate issued by respondent upon the life of her husband, hereinafter called the deceased, for the sum of $2,000. It is not necessary to refer to the pleadings.

The facts material to this decision all of which are conceded, in substance are: That the respondent, during all of the time herein referred to, was a duly incorporated "fraternal beneficial association," with numerous local lodges located in different states of the Union; that the deceased, for some years during his lifetime and at the time of his death, was a member of and was entitled to the benefits provided for beneficial members by the laws of such association; that in his application for membership the deceased stated his occupation to be that of a switchman and that as such he was engaged in switching cars for a certain railroad company, naming it; that as a member of said association a benefit certificate was issued to him for the sum of $2,000, in which the plaintiff was named beneficiary, and said sum of money was payable to her at the time of the death of the deceased if said certificate should then be in force; that, at the time the deceased became a member of said association and at the time of his death, there was in force section 174

of the laws of the association respecting "hazardous occupations," in which it was provided:

"Any member who, at the time of his admission, shall be engaged in, or any member of the association who shall hereafter engage in, any of the occupations enumerated in this section, who is not paying the extra rate, if his death occurs while engaged in such occupation, howsoever happening, his beneficiáry shall receive only such sum as is herein specified to be paid for the particular class of occupation in which the member was so engaged at the time of his death. Class 2: Switchman, the benefit to be paid in case of death being $300.00 on the basis of a $1,000.00 certificate."

The court also made the following finding:

"That the 30th day of October, 1923, said Kavanagh was regularly employed in said business or occupation of a railroad switchman in said railroad switchyard or yards of said Oregon Short Line Railroad Company; that in the afternoon of said day and between the hours of 4 and 5 o'clock p. m., or thereabouts, and after said Kavanagh had ceased his work and labor for that day in the said switchyard or yards, he and one F. W. Payne, an associate and coemploye of said Kavanagh, with an automobile occupied by both, made a trip to the southern part of Salt Lake county for apples; that the automobile so used by them was owned and driven by said F. W. Payne; that the trip was made after said Kavanagh and said Payne had finished their said work for that day in said railroad switchyard or yards; that the making of the trip was not for the benefit of said railroad company in whose employ both said Kavanaugh and said Payne were, but was entirely for the benefit of said Kavanagh and said Payne; that the trip had nothing to do nor was it in anywise connected with their labors or employment as switchmen, nor was said trip otherwise in the course of their said employment; that on the evening of said 30th day of October, 1923, at about 7:30 p. m. o'clock thereof, and while said automobile was being so driven by said Payne on their return from said trip, said Payne, in attempting to avoid an automobile approaching him and also one passing him, turned out too far and drove his said automobile off the cement portion of the highway and into loose dirt, thereby causing said automobile to be thrown and overturned, and thereby severely injuring said Kavanagh, who, as a result of said injuries, died the next day, to wit, the 31st day of October, 1923."

The court further found that the benefit certificate was in full force at the time of the death of the deceased and that he had not paid the increased premium provided for in

the laws of the association for the occupation of switchman. It was also admitted that the plaintiff is the surviving widow of the deceased, and is the beneficiary named in the said benefit certificate, and is entitled to the benefits named therein as provided by the laws of the association.

Upon substantially the foregoing facts the court made its conclusion of law directing judgment in favor of plaintiff for the sum of $600, and denied her judgment for the sum of $2,000. Judgment was entered accordingly, from which plaintiff appeals assigning a number of errors; the principal one being that the court erred in not awarding judgment for the full sum of $2,000 and in entering judgment for the lesser sum.

Each side relies and bases its entire contention upon the following restrictive clause contained in said section 174, which reads: ''If his death occurs while engaged in such occupation, howsoever happening.'' Counsel for plaintiff, as we understand them, contend that the meaning of the clause just quoted is that death must occur while the member is actually or physically engaged in switching cars or while he is exposed to the hazards incident to switching cars, or at least as the result of an injury or affliction which was received by him while actually engaged in switching or as a result of the hazards incident to the switching of cars. In other words, they contend that by inserting the restrictive clause in said section it was intended to guard against the increased hazards incident to the switching of cars and was not directed against the occupation, calling, or status of a switchman as such. Upon the other hand, counsel for defendant insist that the clause is directed against the occupation, calling, or status, and is effective and in operation during the full period of time that a member follows the occupation or calling of a switchman. The district court, it seems, adopted the latter view, and hence denied plaintiff's claim, except for the reduced amount admitted by respondent.

In our opinion the meaning of the language used in section 174 is not so clear and free from doubt as not to require careful consideration and interpretation. The general, in-

deed, we may say the almost universally accepted, doctrine of both the English and American courts is that, in case the meaning of the language used in insurance contracts is ambiguous or doubtful respecting the rights of the insured, such doubt or ambiguity must be resolved in favor of the insured and against the insurer. The doctrine referred to is well stated in *Graves* v. *Knights of Maccabees*, 199 N. Y. 397, 92 N. E. 702. It is there said that the rule of construction in case of ambiguity, or in case of the use of words of doubtful meaning in a benefit certificate or in a contract of insurance, is that the consequences or the burden of the ambiguity must fall upon the insurer who is responsible for the ambiguous language. In *Mathews* v. *Modern Woodmen*, 236 Mo. 326, 139 S. W. 151, Ann. Cas. 1912D, 483, the rule of construction applicable to insurance contracts, including those of beneficial socicties, is stated by Mr. Justice Lamm with his usual clearness and vigor in the following words:

"Speaking to insurance contracts, it is a just and settled rule that their restrictive terms shall be taken most strongly against the insurer. The doctrine of contra proferentem is strictly applied with unaccommodating vigor, and, as said, ambiguities are blandly resolved in favor of the insured."

The reasons for the doctrine are stated by him in the following words:

"When the nice points of learning of insurance law are considered, by and large, together with the complex nature of the subject-matter itself, dealing as it does with the capital event of death, and the protection of the widow and the fatherless, the lively and abding concern of lawgiver and court is not to be wondered at. Policies are contracts, elaborately and shrewdly prepared in advance by calculating and astute experts. They are tendered, ready made, to and accepted out of hand by plain people, the uninformed and unlearned, the unwary and confiding. Insurance policies swarm with intricate technical provisions, stipulations, exceptions, conditions, provisos, limitations, hedging liability about and looking to its avoidance. It is not singular then that courts incline to pit judicial astuteness against 'the astuteness of the policy maker; the latter planting forfeitures in ambush or open, and the former striving to avoid them."

Further on in the opinion, in referring to the foregoing statement, it is said:

"That language is applicable to both fire and life insurance, nor have we any call to exclude fraternal benefit certificates therefrom."

In *Mutual Protective League* v. *McKee,* 122 Ill. App. 376, affirmed by the Supreme Court of Illinois in 233 Ill. 364, 79 N. E. 25, language of similar import is used, and the doctrine announced by the Supreme Court of Missouri is fully approved. We shall not devote further time or space to this question, except to state that in all the cases herein cited, as well as in many others that we have examined, the foregoing rule of construction is approved and applied.

In view of the foregoing rule, what meaning or effect shall be given to the restrictive clause "if his death occurs while engaged in such occupation, howsoever happening"? We may as well dispose of the phrase "howsoever happening" at this point as at any other. That phrase, as a matter of course, merely refers to what immediately precedes it and neither restricts nor enlarges the meaning of the other words in the restrictive clause. It merely refers to the manner of death which may result as an incident of switching cars; that is, death may result from an accident while the member is actually operating a switch, or it may occur while he is passing to and fro in the railroad yards where switching is being done, or it may occur in various other ways, all of which have some relation to or are incident to the switching of cars. It certainly does not mean that it had any application if the member were drowned while taking a bath in a pool, lake, or stream. Further illustrations spontaneously suggest themselves to any one and we refrain from dwelling further upon this phase of the controversy.

The next question is, Does the clause "if death occurs while engaged in such occupation" mean that, if a death results from any cause or at any time or place, regardless of where the member may be, or what he may be doing, or what the cause of death may be, the restrictive clause applies? In other words, does the clause apply during the

full period of time that a member may be following the
occupation of a switchman, whether he be off or on duty,
or whether he is or is not engaged in switching cars or in
doing something incident to such employment? Such a
construction seems neither reasonable nor natural. If such
was intended, why not choose proper words to express that
intention? It was just as easy to say that the reduced
amount of insurance should apply during the whole period
of time that the member should follow the hazardous oc-
cupation or calling, and whether he was on or off duty,
as it was to say what is said. If it was intended to reduce
the amount of insurance if death resulted from any cause
whatever during the full period of time that the member
continued in the occupation as a switchman, why use the
language that is used? Then, again, it seems somewhat
unreasonable to construe the language used so as to make
the reduced insurance effective during the time that the
deceased was not engaged in performing any of the duties
incident to the hazardous occupation. During the time that
he was off duty he was merely exposed to the general hazards
to which the members of society are generally exposed. Any
other beneficial member of the association who might have
been with the deceased during any time he was off duty,
if death had occurred, the beneficiary of such member would
have received the full amount of the insurance named in
his benefit certificate, while, if the death of the deceased had
occurred under the same circumstances, his beneficiary would
receive less than one-third of the amount of insurance re-
covered by the former, although the deceased was exposed
to no greater dangers than was the member whose bene-
ficiary received the full amount of insurance. Indeed, in
the case at bar, if the companion of the deceased, who drove
the automobile at the time the accident occurred, had also
been a beneficial member of the association, but employed
in a different occupation, and was killed in the same ac-
cident, his beneficiary would have received $2,000, while the
beneficiary of the deceased is awarded $600, or less than
one-third of that sum. The construction contended for by

respondent becomes more incongruous still when it is kept in mind that, if the deceased, on the afternoon that he was injured, on leaving his work, had left the employment of the railroad company with the intention of quitting the occupation or calling of switchman, and with the intention of entering upon some occupation classed as nonhazardous, the result would have been different. Under such circumstances his beneficiary would have received the full amount of the insurance, although death resulted from the automobile accident just as it did result. Upon the other hand, if he intended to return to work as a switchman the next day, or within a day or two thereafter, the restrictive clause would apply, and his beneficiary be entitled to only the reduced amount of insurance. Is it not palpably clear that such a result should not be brought about by loose or careless use of language?

In addition to the foregoing, the fact that the reduction in the insurance is more than two-thirds of that allowed ordinary risks should also be considered. Is it reasonable to assume that the association would reduce the insurance in so great an amount when the insured would be exposed to the increased hazard for only a portion of the time? Is it not more reasonable to assume that it was intended when the deceased was off duty, that is, not actively engaged in the hazardous occupation and was exposed only to the ordinary hazards of life, he should be treated the same as all others who are also exposed only to the ordinary hazards? If the reduced rate of insurance is limited to the time that the deceased was on duty, and was exposed to the extra hazards, then the reduction, though large, is nevertheless, reasonable and bears some relation to the increased hazards assumed; but if the reduced insurance also applies when the deceased was not so exposed and when he merely encountered the ordinary hazards of life like all other members of society, then to my mind the reduction seems unreasonable. It is also of some importance to keep in mind that this is not a case where restrictions are inserted in insurance contracts which refer to the occupation or calling itself as constituting

an increased hazard, such as entering into the business of saloon keeper, bartender, or a retailer of intoxicating liquors as a beverage. In such cases moral, as well as other hazards to health, enter into the equation. The occupation of a switchman apart from its direct hazard in discharging the duties incident to the switching of cars, is no more dangerous to health than any other occupation. If, therefore, the full period of time whether on or off duty is to apply to the insured, it should be so stated in unequivocal terms.

In this connection, we desire to state that by what we have said we do not mean that the association could not legally have provided that the reduced rate should apply for the full period of time the deceased followed the occupation of switchman and whether on or off duty, but what we mean is that, if such was intended, it should have been expressed in clear and explicit terms. Nor do we wish to be understood as holding that the fact that the amount of the insurance was reduced more than two-thirds is conclusive respecting the construction that should be given to the restrictive clause aforesaid, but what we mean is that such fact should be kept in mind and be given whatever weight it may be entitled to in arriving at the final conclusion.

Both parties have cited and relied upon certain decisions from very respectable courts of last resort. Plaintiff's counsel, among other cases, refer to the following: *Long* v. *St. Joseph Life Ins. Co.*, 225 S. W. 106, which was decided by the Missouri Court of Appeals, and which, under the same title, was affirmed by the Supreme Court of Missouri in 248 S. W. 923; *Nutt* v. *Security Life Ins. Co. of America*, 142 Ark. 29, 218 S. W. 675; *Rex Health and Accident Insurance Co.* v. *Pettiford*, 74 Ind. App. 507, 129 N. E. 248; *Kelly* v. *Fidelity Mut. Life Ins. Co.*, 169 Wis. 274, 172 N. W. 152, 4 A. L. R. 845; *Myli* v. *American Life Ins. Co. of Des Moines, Iowa*, 43 N. D. 495, 175 N. W. 631, 11 A. L. R. 1097; *Benham* v. *American Cent. Life Ins. Co.*, 140 Ark. 612, 217 S. W. 462; *Barnett* v. *Merchants' Life Ins. Co.*, 87 Okl. 42, 208 P. 275; *Illinois B. Life Ass'n* v. *Jackson*, 88

Okl. 133, 211 P. 508; *Boatwright* v. *American Life Ins. Co.,* 191 Iowa, 253, 180 N. W. 321, 11 A. L. R. 1085.

None of the foregoing cases is precisely parallel to the case at bar, but in a number of the cases cited the principle here involved is discussed and applied in favor of the plaintiff's contention. In nearly all of the foregoing cases the question involved was whether the restrictive clause in an insurance policy or insurance contract by the terms of which the insurance was reduced or avoided if the insured engaged in the military or naval service during the time of war applied in case he died from causes other than those caused by the hazard of war or conflict. In the case of *Benham* v. *American Cent. Life Ins. Co., supra,* the restrictive clause read as follows:

"After one year from the date hereof, this policy shall be incontestable, except for nonpayment of premiums, and except for violation of its conditions as to military or naval service in time of war. * * * Death while engaged in military or naval service in time of war, or in consequence of such service, shall render the company liable for only the reserve under this policy, unless the company's permission to engage in such service shall have been obtained, and such extra premium or premiums as the company may require shall have been paid."

The court, in passing on the meaning that should be given to the restrictive clause aforesaid, in the course of the opinion, said:

"The words in the restricted clause now under consideration mean something more than death to the insured during the period of time he was in military service of the United States. The word 'engaged' denotes action. It means to take part in. To illustrate, a servant injured while in the operation of a train means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. So here the words 'death while engaged in military service in times of war' mean death while doing, performing, or taking part in some military service in time of war; in other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such serv-

ice. This construction, we think, would be according to the natural and ordinary meaning of the words. By the use of the word 'engaged' it must have been intended that some activity in the service should have caused the death, in contradistinction to merely a period of time while the insured was in the service. This view is strengthened when we consider the words following: The words 'or in consequence of such service' relate to the word 'death.' So that death in 'consequence of such service' means death resulting from some act of the insured connected with the service, whether such death occurred during the period of his service or afterwards."

In *Barnett* v. *Merchants' Life Ins. Co.*, supra, the restrictive clause was as follows:

"This policy is unrestricted as to travel, residence, or occupation of the insured, except that if at any time the insured shall engage in military or naval service in time of war (the militia not in active service excepted) he shall secure the company's written consent and pay the extra premium therefor, as from time to time fixed by the company. In the event of noncompliance with this requirement the company's liability hereon in case of death of the insured while in such service will be limited to an amount equal to the legal reserve hereon at date of death."

In referring to that clause, the court said:

"The phrase 'engaged in military service in time of war,' in order to have a consistent and harmonious construction in connection with the general terms and scope of the insurance contract, must denote such service as would increase the hazard or risk of the insurer. Where the insured died many miles away from actual military engagements with an ordinary disease common alike to civil and military life, there is no just reason to permit the insurer to escape liability such as was assumed by it under its primary obligation as shown by the stipulation herein."

We do not deem it necessary to quote further from the cases cited by plaintiff and we shall merely refer the reader to those cases. Upon the other hand, respondent's counsel have cited and rely upon the following cases: *Pauley* v. *Modern Woodmen of America*, 113 Mo. App. 473, 87 S. W. 990; *Bradshaw* v. *Ins Co.*, 107 Kan. 681, 193 P. 332, 11 A. L. R. 1091; *Ruddock* v. *Detroit Life Ins. Co.*, 209 Mich. 638, 177 N. W. 242; *Reid* v. *American Nat. Assur. Co.*, 204 Mo. App. 643, 218 S. W. 957; *Miller* v. *Illinois Bankers' Life Ass'n*, 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378; *Macatawa Transp. Co.* v. *Fireman's Fund Ins. Co.*, 168

Mich. 365, 134 N. W. 193, Ann. Cas. 1913C, 69; *Boyer* v. *Grand Rapids Fire Ins. Co.*, 124 Mich. 455, 83 N. W. 124, 83 Am. St. Rep. 338.

The two cases last cited have no application here and require no further comment. *Bradshaw* v. *Insur. Co.* and *Ruddock* v. *Detroit Life Ins. Co.*, supra, are cases where the restrictive clause related to military and naval service in time of war, and those two cases are in conflict with the decisions cited by plaintiff and from which we have quoted the foregoing excerpts. The other cases cited by respondent are distinguishable from those cited by plaintiff and to which we refer. The decisions are therefore not harmonious. Independently of the cases cited, however, in view of the language used in the restrictive clause involved in this case, and in view of the occupation or calling followed by the deceased and the circumstances of his death, we are forced to the conclusion that the judgment of the district court cannot be sustained.

It is therefore ordered that the judgment be and the same hereby is reversed. In view, however, that the result depends entirely upon the construction that shall be given to the restrictive clause aforesaid and that purely a question of law is involved, the case is remanded to the district court of Salt Lake county, with directions to set aside its conclusion of law and substitute a conclusion of law in favor of the plaintiff and to enter judgment accordingly; plaintiff to recover costs.

GIDEON, C. J., and THURMAN and CHERRY, JJ., concur.

STRAUP, J., did not participate herein.