## No. 14,519.

BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA *v.*
DAVIES ET AL.
(101 P. [2d] 432)

Decided March 25, 1940.   Rehearing denied April 15, 1940.

Mr. SOLON T. GILMORE, Messrs. MOLLETTE & CLEMENTS,
Mr. WM. E. HUTTON, Mr. J. P. NORDLUND, for plaintiff
in error. Messrs. HARZFELD, BEACH & GORDON, of counsel.

Mr. L. M. PERKINS, Mr. HOWELL W. COBB, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ACTION on insurance contract in the face amount of $2,500 brought by the widow and minor son of deceased, insured husband and father, against plaintiff in error, an insurance company, which was defendant below. The company defended on the ground that the policy had lapsed, but the court held that it was still in force and allowed recovery. Reversal is sought on a writ of error. Reference will be made to plaintiff in error as the company, defendants in error as claimants and the insured as Davies.

The policy bears date of September 6, 1929, and the premium record card in the home office of the company shows "date of issue 9/6/29." Davies had great difficulty in paying his premiums. On several occasions his check given in payment was returned by the bank because of insufficiency of funds. However, he struggled along and kept the policy in force, at least until September 6, 1935, the date which becomes important in this case. It is unnecessary to recite all the happenings between the years of 1929 and 1934.

September 18, 1934, the company wrote Davies as follows (Plaintiff's Exhibit 5):
"Dear Mr. Davies:

"We are very happy to tell you that it will be possible for us to complete an additional loan under your policy L-96101 to pay your note due September 6, 1934, as well as the annual premium due on that date if you will sign the enclosed policy loan note for $223.68 and return it to us with your policy.

"The amount of the enclosed note includes the following charges:

Loan indebtedness already against policy
due September 6, 1934......................$ 62.23
Premium note due September 6, 1934,
including interest .......................... 76.32
Annual premium due September 6, 1934........ 72.00
Interest to September 6, 1935.................. 13.13

Total....................................... 223.68

"We sincerely hope you will succeed in finding regular employment before your next premium payment is due and that you can have the loan substantially reduced before that time as it will take all but $1.32 of the loan value to pay your premium with interest on the loan to September 6, 1935.

"While you, no doubt, dislike to add to the indebtedness already standing against the policy, nevertheless we are glad to render this service for you. It is hoped that you will return the signed loan note and your policy to us promptly."

Davies accepted this proposition and signed the note for $223.68, due September 6, 1935, as requested. This note (Plaintiff's Exhibit No. 3) recited, inter alia, as follows: "It is expressly agreed that if and when, on any day, the unpaid principal and interest of this note shall equal the then cash surrender value of the above described policy, as provided in the table of loan and surrender values in said policy, the cash surrender value of said policy shall be automatically applied to the payment of the principal and interest of this note, and said policy, and all rights, benefits and privileges thereunder shall terminate and become void without action on the part of the company, and shall be deemed surrendered to the Company, and this note shall be thereby automatically cancelled and become void; provided, however, that the termination and cancellation of said policy shall not take effect until one month after notice thereof shall have been mailed by Business Men's Assurance

Company of America from its home office in Kansas City, Missouri, to the insured at the address appearing on the records of the Company."

September 6, 1935, the company wrote Davies, as follows:

"Dear Mr. Davies:

"On October 2, 1934 we completed a policy loan to pay the premium extension note given in consideration of an extension of time for the premium due September 6, 1933, as well as the annual premium due September 6, 1934, on your policy L-96101. This loan extended your insurance to September 6, 1935.

"The remaining loan value is not sufficient to take care of another premium, and for that reason you should promptly send your remittance of $32.50 covering the premium and interest due September 6, 1935.

"If no further remittance is received, the balance of the cash value will be applied to the September 6, 1935 premium and your protection extended to September 22, 1935 on which date your insurance will expire.

"It is quite likely, Mr. Davies, that your need for this protection is as great today or perhaps even greater than it was when you first applied for your policy. If this be true we hope you will send us your remittance so that it will reach this office in time to keep your policy in continuous force."

Davies died October 10, 1935, without making further payment.

The policy contained a grace period of thirty-one days. The company's contention is that this period began to run on the day the premium was due, viz., September 6, 1935, and hence, the policy lapsed October 7, 1935, three days prior to Davies' death, due to the fact that the $1.32 credit on Davies' policy on September 6, 1935, according to the automatic extension provisions of the policy, kept it in force only seventeen days, or until September 23, 1935, and that the thirty-one day grace

period does not run from September 23, but from September 6.

The claimants, on the other hand, contend that the policy did not become effective until September 27, 1929; that the annual premiums paid thereafter kept the policy in force to September 27 of each year; that the premiums, in fact, were paid on the contract to September 27, 1935, and that by reason of this the thirty-one days of grace kept the contract in force. They also contend that assuming the due date of the premium to be September 6th, the policy did not lapse until September 23rd, under the extended insurance provision, and that the grace period did not begin to run until the end of the period of automatically extended insurance.

In support of the effective date of September 27, 1929, claimants quote from article V of the policy as follows: "8. When effective. If the first premium shall have been paid in exchange for the binding receipt of the Company upon making application herefor, this policy shall be effective as provided in the binding receipt; otherwise this policy shall not take effect until it has been both delivered to the assured and the first premium paid during the lifetime and good health of the assured."

It is admitted that the binding receipt was not given to Davies at any time prior to September 27, 1929, and that the company's record card as to this item shows "C.O.D. Del. 9/27/29 Pd." Claimants argue that this makes the effective date of the policy at least ambiguous; that the ambiguity must be resolved against the company, and that in any event it is a question of fact determinable only by the trial court.

This point was specifically made an issue by claimants' second cause of action wherein they sought a reformation of the contract to show the effective date as on or about September 23, 1929, instead of September 6, 1929. A demurrer was interposed to the complaint as to this matter, but the court overruled it and permitted evidence to be introduced as to the facts upon which the

prayer for reformation was based. These facts showed, in addition to what already has been indicated, that Davies desired a correction to be made in the Educational Fund Supplement, which was a part of the policy.

The contract was sent to the company September 14, 1929, for the correction, which was made, and it later was returned to the local agent at Durango for delivery to Davies. However, the date on the supplement is also September 6, 1929.

A third cause of action was predicated upon the alleged failure of the company to serve the thirty days notice of forfeiture, but since the trial court properly sustained a demurrer as to it, and no cross error is assigned on that ruling, we do not consider it.

The assignments of error necessary to a determination of this matter involve the answers to three questions: 1. What was the effective date of the policy? 2. From what date do the grace period and that of extended insurance in this policy run? 3. What was the cash value of the policy, and for how long a time did that value extend the insurance without further payment of premiums?

1. We think the effective date of the policy was September 6, as the trial court inferentially held. The ambiguity in the contract is admitted, but we have held in similar cases that the date agreed upon and long recognized by the parties is to be accepted. There were about twenty items of correspondence exchanged between Davies and the company during the six years or more prior to his death, from all of which it conclusively appears that September 6 was recognized and accepted as the effective policy date. "The important point is that the parties thereto had, by their own correspondence and conduct, put upon the policy in question the construction contended for by the company. Such is one of the principal reasons given in the opinion for the court's conclusion. Irrespective of others it was ample

and unanswerable." *Shinall v. Prudential Ins. Co.,* 91 Colo. 194, 14 P. (2d) 183.

■ 2. From what date do the periods of grace and extended insurance run?

The contract specifically provides that "The term of extended insurance shall begin on the date that the unpaid premium was due," which according to the face of the policy and the correspondence between the parties, was September 6, 1935. As to the grace period the contract provides, "A grace privilege of thirty-one days without interest will be allowed for the payment of each premium except the first. * * * Upon failure to pay a premium when due or within the grace period or upon failure to pay any premium note when due, this policy shall immediately cease and become void * * * and all rights shall be forfeited to the Company except as otherwise provided in this policy." The conclusion is inescapable that under the contract, the period of extended insurance and the period of grace ran concurrently, and both began September 6, 1935. 3 Couch on Insurance, p. 2100, §648.

■ Where a policy provides for automatic extension upon default and failure to elect as to cash surrender value, paid up policy and extended insurance, the policy would be extended from the date of default and for such period as would be paid by the cash surrender value. The inception of the extension period is not deferred to the expiration date of the last extension, but runs from the due date of the premium defaulted. *Bankers' Life Co. v. Burns* (C.C.A.) 30 F. (2d) 327, reversing (D.C.) 24 F. (2d) 714.

■ 3. What was the cash value of the policy on September 6, 1935, and for how long did that keep this contract in force? The cash value undoubtedly on that day was $1.32. The company in its letter of September 18, 1934, to insured warned him that all but $1.32 of the loan value had been absorbed in the indebtedness against the policy as of that date, namely, September 6, 1935.

In other words the cash surrender value was $225, of which $223.68 had been exhausted in policy loans for payment of past premiums.

The correctness of this balance, namely, $1.32, was concurred in by counsel for claimants as is indicated by the following excerpt from the record: "Mr. Cobb: In this particular case, Your Honor, under the dealings of the parties, in 1934, it was figured at the beginning of the sixth year. In other words, they give them the cash surrender and loan value for the sixth policy year, at the beginning of the year. The court: And he still had a balance of $1.32? Mr. Cobb: He still had a balance of $1.32. The Court: So that the loan value was the same then as it was in September, 1935? Mr. Cobb: Now then, when he goes into September, 1935, you have an increase in the loan value of the policy; in fact in 1934 (I am referring to the table), it would be the beginning of 1934, he was given the benefit of $225.00, in 1935 the loan value of that policy, if the full premium for that year had been paid, would have been $285.00, and increase of $60.00."

It is to be noted at this point that the contract is not term insurance, and that the applicable statute, volume 3, chapter 87, section 65, '35 C.S.A., C.L., §2523, exempts "term or convertible term policies."

As to the availability of this cash balance ($1.32) for extended insurance, the contract provides:

"The Cash Surrender and Loan Values in this Table are for full paid policy years and are equal to the entire reserve as defined herein, less a surrender charge not exceeding two per cent of the amount insured hereunder. These values will be increased proportionately for a partial payment of the next premium or will be reduced by any indebtedness to the Company on account of or secured by this policy if such indebtedness is not previously paid in cash.

"The amount available for Paid Up Insurance, Extended Insurance or Premium Loan, shall always equal

the Cash Surrender Value, subject to like increase for partial payment of premium, and like reduction for indebtedness. Such amount has been or shall be applied as a net Single Premium, at the attained age of the assured, according to the American Experience Table of Mortality and three and one-half per cent interest, (1) to provide for the assured as much Paid Up Life Insurance as this amount will purchase, or (2) to extend the face of this policy or if there be any indebtedness hereon the face of the policy less such indebtedness for such a term as this amount will purchase."

The insured was forty-five years of age when he died and the contract provides that he should be charged the rate as of that age, but since it nowhere appears in the record that his payments were figured on that rate, we can only base our computations on the rate used by him in his payments, which, of course, is more favorable to the insured, i.e., $72.00 a year.

We have carefully computed the amount of extended insurance that the $1.32 would cover by taking into consideration the proportionate increase of the value of the policy for this partial payment of premium less the proportionate increase of the indebtedness to the company, and find that the testimony, including that of one of the witnesses for the claimants, was correct in extending the policy in force for seventeen days.

The premium record card of the insured in the home office of the company contained this notation: "Pd. by CV 12-9 '35 3.36, "and the trial court apparently assumed that the policy had a cash surrender value of $3.36 on December 9, 1935. What he probably overlooked in that regard was that immediately under the above was another notation reading "In force to 9-22-35." However, the court did make the following observation concerning this $3.36: "Of course, I don't know how they figure that out." The company's explanation of it was: "The 3.36 shows the increase in the cash value of the policy while it was continued in force from September 6, 1935,

to September 22, 1935, and this amount was absorbed by the pro rata share of the premium with interest on the loan and the past due premium. These items figures 3.36 on that same date." For the court to hold, in view of this uncontradicted testimony, that this $3.36 was sufficient to carry the insurance in force beyond October 10th—the date of death—was error. Nor can it be assumed that the insured had eight years and one hundred seventy-three days of extended insurance, because the cash value upon which this is predicated had been consumed in the payment of premium loans of which the insured had availed himself during the time the policy was in force.

This renders unnecessary any discussion of whether the suit based on the supplemental educational fund contract was prematurely brought. Being part of the entire contract, it falls with it.

Our conclusion, therefore, is that since both the periods of extended insurance and the days of grace had expired before October 10th, this contract was not in force at the time of the death of the insured. Accordingly, the judgment is reversed.

Mr. Chief Justice Hilliard and Mr. Justice Burke concur.