## FAWCETT v. SECURITY BEN. ASS'N.

No. 6210.   Decided July 2, 1940.   (104 P. 2d 214.)

194

A. C. Melville, of Salt Lake City, *Harry L. Ladbury*, of Topeka, Kan., and *A. W. Fulton*, of Chicago, Ill., for appellant.

*Romney, Romney & Boyer*, of Salt Lake City, for respondent.

McDONOUGH, Justice.

This case involves the construction of a contract of insurance. Respondent William A. Fawcett brought an action in the district court for death benefits based on a benefit certificate issued to Harriett P. Fawcett by appellant, a fraternal benefit society. The case was tried upon an agreed statement of facts. Judgment was entered in favor of respondent, from which judgment this appeal is taken.

The stipulated facts show that on or about February 6, 1922, Harriett P. Fawcett made application for membership in a local council of the Security Benefit Association, hereinafter called appellant, and for a benefit certificate for $1,000 on a "Twenty-Pay Plan." The application was approved and a certificate duly issued; bearing date of February 14, 1922, and delivered to the applicant on February 18, 1922, at which time the latter paid the first monthly contribution on said certificate, plus local council dues. Thereafter, Harriett P. Fawcett paid the "monthly" assessments to and including September, 1928, the last payment being made on September 30th. On January 6, 1929, pursuant to a provision in the contract of insurance, insured

made application to appellant company for extended insurance on the basis of the assessments theretofore paid. On such basis according to the certificate she was entitled to extended insurance for a period of ten years and thirty days. Appellant, pursuant to the application, endorsed on the benefit certificate the following:

"The Security Benefit Association, upon the request of the said Harriett P. Fawcett, hereby waives the periodical contributions stipulated in this certificate of membership and continues Whole Life Protection for ten years and thirty days from October 1, 1928, *this Certificate of membership expiring October 30, 1938.*" (Italics added.)

Harriett P. Fawcett died November 7, 1938.

The court concluded that the benefit certificate, dated February 14, 1922, was at the time of the death of Harriett P. Fawcett, in full force and effect for death benefits by virtue of the provision for extended insurance. This conclusion accepts the theory urged by respondent in asserting his claim for benefits namely: That the benefit certificate, delivered to the insured on February 18, 1922, and calling for the payment of "monthly" assessments, continued in force from month to month from the date of delivery; that the payments made on the policy, beginning on the date the certificate was delivered, were for the period from the 18th of one month to and including the 17th day of the next month; that therefore the final payment made on September 30, 1928, paid for insurance up to and including October 17, 1928; that the period of extended insurance of ten years and thirty days commenced on the date of the expiration of the other insurance and therefore did not expire until November 17, 1938—ten days after the death of insured.

Appellant's assignments of error assail the conclusion of the lower court that the extended insurance was in effect at the time of the death of Harriett P. Fawcett. The principal question to be resolved on this appeal, as posed by appellant in its brief, is "whether the payment made February 18, 1922, paid for insurance to March 18, 1922, or

whether it paid the assessment for the month of February 1922, requiring another payment to pay the assessment for the period commencing March 1, 1922, and whether subsequent payments were for the period commencing on the first day of each subsequent month or for the period commencing on the 18th day of the month."

The determination of the question depends upon the construction of the contract of insurance between appellant and deceased. The benefit certificate, "together with the Constitution and Laws of the Society and all amendments to each thereof, and the application for membership," constituted the agreement between the parties. Hence, all of the provisions therein must be read together to determine the meaning of the contract. *Lawson* v. *Brotherhood of American Yeomen*, 138 Kan. 248, 25 P. 2d 344; *Jovich* v. *National Croation Soc.*, 53 Wyo. 504, 86 P. 2d 729; *Kimball* v.*New York Life Ins. Co.*, 96 Vt. 19, 116 A. 119; *Dunn* v, *Detroit Federation of Musicians*, 268 Mich. 698, 256 N. W. 581; *Steen* v. *Modern Woodmen of America*, 296 Ill. 104, 129 N. E. 546, 17 A. L. R. 406. See also *Wertheimer* v. *Travelers' Protective Ass'n*, 10 Cir., 64 F. 2d 435.

The benefit certificate provides that in "consideration of the first monthly contribution of $2.35 paid before or at the time of the delivery of this Certificate, and thereafter $2.35 to be paid within each month to the Financier of the Local Council, for a completed period of twenty years from the date of the first payment thereon," the applicant will receive the protection therein set out.

In addition, the Constitution and Laws contain several provisions with respect to payment of dues and assessments. Section 96, reads, in part:

"Upon receipt of the Beneficiary Certificate, the Financier shall notify the candidate that he may be initiated by the Subordinate Council at any regular or special meeting occurring within 60 days after the date of issuance of such Certificate. At any time after election

to beneficiary membership and before the receipt of the Beneficiary Certificate the applicant may, if he so desires, be initiated as a social member and if thereafter a Beneficiary Certificate shall be issued pursuant to such application, such Beneficiary Certificate shall not become effective until manually delivered to the applicant while the applicant is in good health and the assessment and dues, *for the month in which the Certificate is delivered*, have been paid, and said Beneficiary Certificate signed by the applicant while in good health, nor unless delivered within sixty days after the date thereof." (Italics added.)

## Other pertinent sections are as follows:

"Sec. 98. When Certificate in Force. The Beneficiary Certificate Shall become effective and be in force from and after the initiation of the member and the payment of one assessment and Subordinate Council dues to the Financier, the Certificate having been signed by the member and delivered to him while in good health."

"Sec. 103. Assessment and Dues to Be Paid Without Notice. Before delivering the Beneficiary Certificate, upon the initiation of a member, the Financier of the Council shall collect one assessment and the local dues from the member, *for the month in which the Certificate is delivered*, and thereafter, on or before the *last day of each succeeding month*, the member shall, without notice pay the sum of one assessment and the local dues to the Financier. The assessments and dues for the month in which the member dies shall be paid to the Financier before the amount due on Certificate is paid the beneficiary." (Italics added.)

"Sec. 108. To the assessment specified in the preceding sections shall be added the annual dues of the Subordinate Council, divided into twelve equal parts. The one-twelfth part thereof being due and payable monthly, and at the same time as the assessments."

"Sec. 112. Members Suspended by Their Own Act. The Financier of each Subordinate Council shall keep a book wherein all assessments and dues received from each member holding a valid Certificate shall be credited. Such entries shall be made showing the date when actually received by the Financier. All *assessments for every month* shall become due and payable on the *first day of the month*. The Certificate of each member who has not paid such assessment or assessments and dues on or before *the last day of the month* shall, by the fact of such non-payment, stand suspended without notice, * * *. Notice of all special or extra or additional or increased assessments shall be given by publication of the notice of levy, and date when due, in the official

paper of the Association, and any member failing to pay such special, extra, or increased or additional assessment or assessments in compliance with such notice *on or before the last day of the month for which levied* shall, by reason of such failure, stand suspended in the same manner as for failure to pay the regular monthly assessments and dues \* \* \*." (Italics added.)

"Sec. 159. Financier to Make Monthly Reports. On or before the 5th day of each month the Financier shall make a full and complete report of all assessments paid for or by each member of the Subordinate Council for the preceding month \* \* \* and shall forward, with remittance covering same to the National Secretary \* \* \* in time to reach his office by due course of mail, not later than the 15th day of the month."

Respondent urges that the provisions of the Constitution and Laws, set out above, are inconsistent with those of the benefit certificate and therefore the provisions of the certificate only should be considered. He further contends that even though it be determined that the provisions of the Constitution and Laws are not inconsistent with those of the certificate, nevertheless the various provisions of the entire contract, when read together, are ambiguous and uncertain as to when assessments were due under the policy and when protection under the benefit certificate ceased upon failure to pay an assessment.

It is well settled that where there is an inconsistency between the provisions of a benefit certificate and the constitution or by-laws of a mutual benefit organization the provisions of the benefit certificate govern where they are more favorable to the insured; and those provisions which are more favorable to insured are to be accepted rather than those inconsistent therewith. *Dunn* v. *Detroit Federation of Musicians,* supra; *Sovereign Camp, W. O. W.* v. *Reed,* 208 Ala. 457, 94 So. 910; *Mosson* v. *Woodmen of Union,* 164 Ark. 568, 262 S. W. 648; *McDaniel* v. *Missouri State Life Ins. Co.,* 185 Ark. 1160, 51 S. W. 2d 981; *Kennedy* v. *National Accident & Health Ins,. Co.,* Mo. App., 76 S. W. 2d 748; *Green* v. *Royal Neighbors of America,* 146

Kan. 571, 73 P. 2d 1, 114 A. L. R. 244; *Zink* v. *Supreme L. Knights of Pythias Ins. Dept.*, 217 Ill. App. 54; *Harvey* v. *Union Central Life Ins. Co.*, 4 Cir., 45 F. 2d 78, *certiorari denied* 283 U. S. 829, 51 S. Ct. 353, 75 L. Ed. 1442.

The cases also hold that where the provisions of a contract of insurance, such as the one involved here, are ambiguous or uncertain, that interpretation should be given to the contract which will, if possible, avoid a forfeiture; that in such a situation the contract should be construed ■ strictly against the company or association and in favor of the insured. *Harvey* v. *Union Central Life Ins. Co.*, supra; *Moran* v. *Knights of Columbus*, 46 Utah 397, 151 P. 353; *Kavanagh* v. *The Maccabees*, 66 Utah 307, 242 P. 403; *Sovereign Camp, W. O. W.* v. *Reed*, supra; *Dunn* v. *Detroit Federation of Musicians*, supra; *Grand Lodge A. O. U. W.* v. *Hopkins*, 175 Okl. 170, 52 P. 2d 4; *Hampe* v. *Metropolitan Life Ins. Co.*, Mo. App., 21 S. W. 2d 926. See also *McMaster* v. *New York Life Ins. Co.*, 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64.

Respondent concedes that the provisions of the Constitution and Laws of the Association, if considered apart from the certificate, support appellant's contention as to the construction of the contract relative to the period covered by the initial monthly contribution and the due date of subsequent contributions, but asserts that the provisions of the certificate clearly support his interpretation and should prevail. He points to the provision of the certificate, hereinabove quoted having reference to monthly contributions, as clearly supporting the construction of the contract made by the trial court, stressing the words "and thereafter $2.35 to be paid within each month * * * for a completed period of twenty years from the date of the first payment thereon;" his contention being that since the period of twenty years extends from the date of the first payment, then the first monthly contribution should, under proper construction, pay for one month's insurance in advance so that the

240th or last payment during the twenty year period would cover the month preceding a date in the twentieth year corresponding to the date of the first monthly contribution. Thus there would be exactly 240 months or 20 years of insurance paid for entitling insured to protection thereafter for life.

However, the provision of the certificate is for payment of an *initial* contribution of $2.35 and the same sum to be paid "within each month for a completed period of twenty years from the date" of such initial payment. This provision, it is submitted, is certainly susceptible of being construed to mean that there should be but 240 monthly contributions within a "completed period of 20 years," whether the first payment be regarded as paying for insurance for a month from the date of payment or merely a contribution made within the calendar month, pursuant to such provision as construed by appellant, the subsequent contributions being due on the first day of each subsequent month.

Under the latter construction there would be a completed period of payment of twenty years from the date of the first contribution, regarding the first payment as being one of those within the twenty years—as it must be under either construction. In other words, the provision under discussion designates the number of monthly contributions which are required to purchase "paid up" insurance. Had the premiums been stipulated to have been paid annually for a completed period of 20 years from the date of the first payment, the 20th annual payment would complete the payments under the wording of such provision of a certificate whether or not the second and subsequent payments became due and payable on the same date of subsequent years as the first. Since such provision of the certificate is not so clear as to be susceptible of but one construction, we must determine which of the permissible interpretations thereof is consistent with the other provisions of the entire agreement. Even though a particular provision of a

contract of insurance be susceptible of more than one meaning, the construction of such provision more favorable to the assured will not be adopted if other provisions of the entire contract clearly resolve the ambiguity in favor of the contrary construction.

In the present case, as we view it, there is neither an inconsistency nor an ambiguity in the pertinent provisions of the contract. When the provisions of the contract are read together as a whole, their meaning is definite and clear. In the first place, the benefit certificate provides for payment of a "monthly contribution" to be paid "within each month." The Constitution and Laws further provide that upon initiation there shall be collected from the insured one assessment and local dues "for the month in which the certificate is delivered;" that the certificate "shall not become effective" until delivered to the applicant in good health and until the dues and assessments "for the month in which the certificate is delivered" are paid; that without notice the member must pay the local dues and assessment "on or before the last day of each succeeding month;" that all assessments for every month are due and payable "on the first day of the month;" that the certificate of any member who fails to pay the assessment and dues "on or before the last day of the month" shall stand suspended; that notice of all special assessments shall be given by publication of date of levy and date when due, and when not paid "on or before the last day of the month for which levied" shall work a forfeiture as for non-payment of any regular assessment; that "on or before the 5th day of each month" the local Financier shall make a full and complete report of "all assessments paid for or by each member  *  *  *  for the preceding month."

Under the contract Harriett P. Fawcett was insured from month to month for so long as she paid the "monthly" dues and assessments. The term "month" as it is used in the in-

surance contract could have reference only to a calendar month, beginning with the first day thereof and ending with the last. Any other interpretation would be inconsistent with the express provisions of the contract which specifically provides that dues and assessments are due and payable "on the first day of the month" and unless they are paid "on or before the last day of the month" protection under the benefit certificate ceases.

Use of the word "month" generally denotes a calendar month, unless the contrary is clearly indicated. In *Sovereign Camp, W. O. W.* v. *Rhyme*, 171 Miss. 687, 158 So. 472, reference in a contract of insurance to the first day of the month and last day of the month was construed to mean a calendar month. The Supreme Court of Alabama in *Sovereign Camp, W. O. W.* v. *Reed,* supra, interpreted the term "month" in an insurance policy as follows [208 Ala. 457, 94 So. 913] :

> "In the contract are employed the words, referring to the payment of premiums, 'monthly installment,' 'following month,' and 'monthly payment'; the word 'month,' as so used in the beneficiary certificate and exhibits thereto or documents incorporated therein by agreement of the parties, had reference to a calendar month. This is the usual acceptation of the word 'month,' unless it appears in the context to have been intended otherwise." (citing numerous authorities)

For the interpretation of the word "month," see *Friend in Need Benefit Ass'n* v. *Hardin,* Tex. Civ. App., 88 S. W. 2d 1103, 1105 (where the court held that a provision in the insurance contract to the effect that "assessments shall be collected monthly" permitted payment to be made "at any time during the current month") ; *Craig* v. *Golden Rule Life Ins. Co.,* 184 Ark. 48, 41 S. W. 2d 769; *Warfield Natural Gas Co.* v. *Clark's Adm'x,* 257 Ky. 724, 79 S. W. 2d 21, 97 A. L. R. 971.

A further fact which supports the above interpretation of the term "month" is the manner in which the payment of the monthly assessment is linked with the payment of

the dues. The Constitution and Laws provide for the payment of the dues and one assessment for the month in which the benefit certificate is delivered, and thereafter both the dues and assessments are to be paid together. It is further provided that the annual local council dues are to be divided into twelve equal parts, one part being payable "monthly, and *at the same time as the assessments.*" (Italics added.) This seems to indicate that the dues of all the members of the council were due and payable at the same time, and also that the assessments were all due and payable at the same time, viz., at the first of each month—not at some date during the month corresponding to the date of the month when the member was initiated since all the members would not be initiated on the same day.

Respondent, however, contends that such a construction of the insurance contract will deprive the insured of protection for part of a month for which payment was made. The policy did not become effective until delivered on February 18, 1922, at which time dues and one assessment for a full month were paid. If the dues and another assessment were again payable on the first day of March, only a few days of insurance were obtained by the initial payment. The following cases hold that payment of the initial premium entitles the insured to insurance for the full term of insurance, commencing from the date the policy became effective: *Harvey* v. *Union Central Life Ins. Co.,* supra; *Kennedy* v. *National Accident & Health Ins. Co.,* supra; *Stramback* v. *Fidelity Mut. Life Ins. Co.,* 94 Minn. 281, 102 N. W. 731; *Halsey* v. *American Central Life Ins. Co.,* 258 Mo. 659, 167 S. W. 951.

However, the parties to an insurance contract are free to make any provision for payment of premiums or assessments they may desire, and when the contract provides for a different date for paying future premiums, the parties are bound thereby—even though by so doing the insured receives less than a full term of insurance

for the first or initial payment. *Shira* v. *New Lork Life Ins. Co.* 10 Cir., 90 F. 2d 953; *McDaniel* v. *Missouri State Life Ins. Co.*, supra; *Weller* v. *Manufacturers' Life Ins. Co.*, 256 Mich. 532, 240 N. W. 34; *Brown* v. *Mutual Life Ins. Co. or New York*, 186 S. C. 245, 195 S. E. 552; *Cantey* v. *Philadelphia Life Ins. Co.*, 166 S. C. 181, 164 S. E. 609; *Craig* v. *Golden Rule Life Ins. Co.*, supra.

In *Brown* v. *Mutual Life Ins. Co., of New York*, supra [186 S. C. 245, 195 S. E. 558], the Supreme Court of South Carolina discusses this problem at length and holds that the term of extended insurance commenced to run "from the anniversary of the date fixed for payment of premiums in the policy and not the anniversary of the date of delivery." To the same effect is *Pladwell* v. *Travelers' Ins. Co.*, 134 Misc. 205, 234 N. Y. S. 287; *McDaniel* v. *Missouri State Life Ins. Co.*, supra. For annotations on this subject see 6 A. L. R. 774, 32 A. L. R. 1253, 80 A. L. R. 966, and 111 A. L. R. 1420.

There is nothing in the contract of insurance in the present case that indicates any intention to give the insured a full month's protection for the initial payment of dues and one assessment. On the contrary, the Constitution and Laws provide specifically that upon initiation of a new member there shall be collected one assessment and local dues *"for the month in which* the Certificate is delivered, and thereafter, *on or before the last day of each succeeding month,* the member shall, without notice, pay the sum of one assessment and the local dues to the Financier." (Italics added.) Thus the contract provides for payment of a month's dues and one assessment for the calendar month in which the certificate becomes effective, even though only a portion of that month is left. That such a provision in an insurance contract is binding on the parties is clearly illustrated by the cases above cited.

Having determined that the contract of insurance extended from one calendar month to the next, so long as the

monthly dues and assessments were paid within such month, we must conclude that the final payment of dues and the monthly assessment in September, 1928, paid for ■ insurance to the end of that month. The extended period of insurance for ten years and thirty days commenced to run from the first day of October and expired October 30, 1938. Therefore, at the time of Harriett P. Fawcett's death on November 7, 1938, the contract of insurance had terminated.

The fact that there was a grace period during October, 1928, during which time deceased was protected under the benefit certificate, does not lengthen the period of extended insurance. The latter commenced to run from the expiration of the last month for which dues and assess- ■ ments were paid, and not from the expiration of the grace period which followed. *Shira* v. *New York Life Ins. Co.*, supra. See, also, *Lippman* v. *Equitable Life Assur. Society*, 4 Cir., 58 F. 2d 15; *Joyner* v. *Jefferson Standard Life Insurance Co.*, 5 Cir., 53 F. 2d 745; *Hutchison* v. *National Life Ins. Co.*, 196 Mo. App. 510, 195 S. W. 66; *Wilkie* v. *New York Mut. Life Ins. Co.*, 146 N. C. 513, 60 S. E. 427; *Grattan* v. *Prudential Ins. Co.*, 98 Minn. 491, 108 N. W. 821. Contra: *Business Men's Assur. Co. of America* v. *Davies*, Colo. Sup., 101 P. 2d 432.

In support of our construction of the contract is the endorsement of extended insurance placed on the benefit certificate when Harriett P. Fawcett applied for extended insurance after ceasing to pay the regular monthly dues and assessments. This endorsement states that the ■ association "upon the request of the said Harriett P. Fawcett * * * continues Whole Life Protection for death benefits only, in the sum of $1000.00 for ten years and thirty days *from October* 1, 1928, this Certificate of membership *expiring October* 30, 1938." (Italics added.) Although the endorsement was placed there by the association, still it recites that such was done at the request of Harriett

P. Fawcett, and the latter accepted such endorsement and failed to make any protest of the dates therein set out. It has been held that acceptance without objection of an endorsement for extended insurance binds the insured to the construction placed in the endorsement. *Kimball* v. *New York Life Ins. Co.*, supra. And in *Craig* v. *Golden Rule Life Ins. Co.*, supra, it was held that insured was bound by a construction of the insurance contract that premiums were payable on the first day of the calendar month, which construction had been placed thereon by insured's conduct. See, also, *Business Men's Assur. Co. of America* v. *Davies,* supra; and *Rybczymski* v. *Chicago Fraternal Life Ass'n,* 131 Misc. 228, 227 N. Y. S. 366, affirmed, 224 App. Div. 777, 230 N. Y. S. 903 (where the insurance company was held to be bound by the date on a second policy issued where there was no evidence that the first policy was delivered or accepted). And the respondent, in the present case, can be in no better position than Harriett P. Fawcett would have been under the terms of the insurance agreement.

Two cases strongly relied on by respondent (although conceded not to be directly in point) are *Sovereign Camp, W. O. W.,* v. *Reed,* supra; and *Rybczymski* v. *Chicago Fraternal Life Ass'n,* supra.

The Reed case laid down a rule with respect to the interpretation of the term "month" in an insurance contract, which rule is quoted herein as being consistent with the interpretation placed on the contract involved in this case. (However, the facts in the Reed case were such that the court held that even though a calendar month was intended by the terms of the contract, the policy contemplated the next succeeding calendar month from the one in which the policy took effect, since the policy was not delivered until the 29th day of the month.)

The Rybczymski case also adopted a view that a provision that premiums must be paid "on or before last day of month

in which certificate was issued" meant a calendar month but the court determined that the month in which the second certificate was issued was controlling (rather than the date of the first policy which apparently was not delivered) as to the month when subsequent yearly premiums were due.

The decision of the lower court awarding death benefits to respondent should be reversed and the cause remanded with instructions to dismiss the complaint. Costs to appellant.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.